UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRANDON L. FAKE, C. FAKE,           :        CIVIL NO: 1:17-CV-02242
and B. FAKE,                        :
        Plaintiffs          :
                            :        (Judge Kane)
        v.                  :
                            :        (Chief Magistrate Judge Schwab)
COMMONWEALTH OF                     :
PENNSYLVANIA, *et al*.,             :
                            :
        Defendants          :
                            :

## REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff Bandon L. Fake ("Mr. Fake") contends that the defendants violated his rights in connection with state child-custody proceedings. He also purports to bring claims on behalf of his two children, C. Fake and B. Fake. The defendants moved to dismiss the amended complaint. For the reasons discussed below, we recommend that the Court grant their motions to dismiss. We also recommend that the Court deny Mr. Fake's motion for a temporary restraining order and a preliminary injunction.

## II.  Background and Procedural History.

Mr. Fake began this action on December 6, 2018, by filing a complaint and an application for leave to proceed in forma pauperis.  Twenty days later, he filed a motion for the appointment of counsel and an amended complaint naming five defendants: (1) the Commonwealth of Pennsylvania; (2) the Philadelphia Court of Common Pleas; (3) the Honorable Margaret T. Murphy; (4) the Honorable Diane R. Thompson; and (5) Robert A. Graci, the Chief Counsel of the Judicial Conduct Board of Pennsylvania.  We base the following summary of Mr. Fake's claims on the facts Mr. Fake alleges in his amended complaint as well as the numerous exhibits he attached to his amended complaint.  We start by briefly summarizing the state proceedings as shown through the exhibits attached to the amended complaint.

Mr. Fake has been involved in a protracted custody dispute with Dianne J. Fake ("Ms. Fake"), the mother of his children.  In 2016, the Court of Common Pleas of Monroe County entered a custody order providing that Mr. Fake and Ms. Fake shall share legal and physical custody of the children with Ms. Fake having primary physical custody subject to certain periods during which Mr. Fake had physical custody. *Doc. 3-2* at 6–15.  The custody dispute later moved to the Court of Common Pleas of Philadelphia County.  There, Mr. Fake filed numerous

petitions alleging that Ms. Fake was in contempt of the custody order. *Id*. at 23–36.

He also filed numerous private criminal complaints against Ms. Fake. *Id*. at 16–22.

On June 27, 2017, Mr. Fake filed a petition for emergency relief alleging,

among other things, that Ms. Fake was regularly consuming alcohol and

prescription drugs, acting erratic while intoxicated, and failing to follow through

with court-ordered drug and alcohol treatment. *Id*. at 3–5.  After a hearing on that

emergency petition, on June 30, 2017, Judge Fanning issued a temporary custody

order which provided, among other things, that Mr. Fake shall have primary

physical custody of the children but that he may not drive with the children in his

vehicle unless and until further order of the court. *Id.* at 1.  Judge Fanning's order

also provided that Ms. Fake "shall submit forthwith to a seventeen (17) panel hair

follicle drug test" and that if she fails to do so, "it will be deemed a positive test

result." *Id*. at 2.  Further, Judge Fanning's order provided that the protracted

hearing scheduled for August 9, 2017, before Judge Thompson shall stand. *Id.*

Mr. Fake appealed that portion of Judge Fanning's order that prohibited him

from driving with the children in the car. *Id*. at 57–60.  On August 30, 2017, the

Superior Court quashed Mr. Fake's appeal of Judge Fanning's June 30, 2017

Order. *See* Docket Sheet in *BLF v. DJF*, 2621 EDA 2017 (Pa. Super. Ct.).[1]  It

---

[1]  The court may take judicial notice of adjudicative facts that are not subject to
reasonable dispute because they are "generally known within the trial court's
territorial jurisdiction" or because they "can be accurately and readily

determined that the appeal was untimely and that, in any event, Judge Fanning's Order was not a final appealable order. *Id*.

In the meantime, following a partial hearing on August 9, 2017, Judge Thompson ordered, among other things, that Mr. Fake and Ms. Fake shall share legal custody, that Ms. Fake shall have primary physical custody, that both Mr. Fake and Ms. Fake shall undergo a psychological evaluation, and that Ms. Fake shall submit to a 17 panel hair follicle drug test. *Id*. at 66–68. Judge Thompson also ordered that "all outstanding petitions are hereby continued and relisted for a protracted hearing on December 6, 2017" before her. *Id*. at 67.

Mr. Fake filed a motion for reconsideration of the Order of August 9, 2017, a motion to vacate that order, and a motion to stay that order arguing, among other things, that Judge Thompson did not have jurisdiction to enter the Order of August 9, 2017, because his appeal of Judge Fanning's June 30, 2017 Order was pending at the time. *Id*. at 139–42, 144–45. Judge Thompson denied those motions. *Id*. at 143, 146–47.

---

determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2). The docket of Mr. Fake's appeal to the Superior Court is a public record of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008) (taking judicial notice of court docket); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (stating that court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity").

Mr. Fake appealed the Order of August 9, 2017, and he also filed in the Superior Court of Pennsylvania a motion to disqualify Judge Thompson, a motion to disqualify Judge Murphy, and a petition for emergency relief requesting that the August 9, 2017 Order be vacated. *Id*. at 148–52, 157–62.  In the Court of Common Pleas, he also filed another petition for contempt, a motion for Judge Thompson to recuse herself, and a motion to disqualify Judge Murphy. *Id*. at 153–56, 163–73.

On August 30, 2017, the Superior Court quashed Mr. Fake's appeal of the Order of August 9, 2017, concluding it was not a final appealable order. *See* Docket Sheet in *BLF v. DJF*, 2687 EDA 2017 (Pa. Super. Ct.).  The Superior Court also denied as moot his motion to vacate, his petition for emergency relief, and his motion to disqualify as well has his subsequent application for reconsideration. *Id*. On September 20, 2017, the Superior Court denied Mr. Fake's motion for reconsideration of its August 30, 2017 Order, it denied his motion to disqualify without prejudice to him seeking such relief in the trial court, and it cautioned Mr. Fake that "any further frivolous filing will result in assessing of costs against him." *See* Docket Sheet in *BLF v. DJF*, 2621 EDA 2017 (Pa. Super. Ct.); *Doc. 3-2* at 194.  Mr. Fake then filed a petition for allowance of appeal, *doc. 3-2* at 195–2017, which the Pennsylvania Supreme Court denied on December 5, 2017. *See* Docket Sheets in *BLF v. DJF*, 489 EAL 2017, 491 EAL 2017, and 492 EAL 2017 (Pa. Supreme Court).

On November 28, 2017, upon request of Ms. Fake, the hearing scheduled for

December 6, 2017, was continued to February 20, 2018, and the provision of the

earlier orders regarding drug testing was modified such that Ms. Fake was ordered

to submit to a nine panel drug test instead of a 17 panel drug test. *Id*. at 176.

Mr. Fake filed three requests for an investigation with the Judicial Conduct

Board—two regarding Judge Thompson and one regarding Judge Murphy. *Id*. at

179-92.  The Judicial Conduct Board acknowledged receipt of Mr. Fake's filings,

informed him that it will notify him in writing of the Board's final disposition, and

cautioned him to "keep in mind that it is often many months after receipt of a

complaint before a final disposition can be made." *Id*. at 193.

Before he began the current action, Mr. Fake filed two prior federal actions.

In the first, filed in the United States District Court for the Eastern District of

Pennsylvania, Judge Pappert dismissed the case:

> In July 2016, Fake filed a pro se complaint against 44
> defendants, alleging a conspiracy in the Philadelphia Court of
> Common Pleas in connection with divorce, support, and
> custody proceedings between Fake and his ex-wife that began
> in 2004.  The District Court granted Fake's motion to proceed in
> forma pauperis and screened the complaint under 28 U.S.C.
> § 1915(e).  The Court dismissed some claims with prejudice
> and others without prejudice and allowed Fake to file an
> amended complaint. Dist. Ct. Mem., Dkt. #2 at 9-10.
>
> In October 2016, the District Court dismissed Fake's amended
> complaint, determining that his claims were either legally
> frivolous or that they failed to state a claim upon which relief
> could be granted.  Again, the District Court dismissed some of

Fake's claims with prejudice and some claims without prejudice. Dist. Ct. Mem., Dkt. #6. The Court allowed Fake another chance to file an amended complaint "only with respect to his claims that have not been dismissed with prejudice." Dist. Ct. Order, Dkt. #7.

Fake then filed a second amended complaint against the City, Dianne Fake (his ex-wife), Patrick J. Murphy (who at the time was Under Secretary of the United States Army), and four judges who served on the Philadelphia Court of Common Pleas during the time period in his complaint. In December 2016, the District Court dismissed the second amended complaint with prejudice, determining that Fake failed to state a viable conspiracy claim, that he failed to state a basis for a claim against the City, and that the judicial defendants were entitled to judicial immunity. Fake filed a timely appeal.

*Fake v. City of Philadelphia*, 704 F. App'x 214, 215 (3d Cir. 2017) (footnote omitted), *cert. denied*, 138 S. Ct. 754 (2018). The Third Circuit affirmed the dismissal of that action. *Id*. at 217.

In the second federal action, filed on August 11, 2017, also in the United States District Court for the Eastern District of Pennsylvania, Mr. Fake contended "that the Commonwealth of Pennsylvania, the First Judicial District of Pennsylvania, and Judges Margaret Murphy and Diane Thompson" "violated his rights to due process and equal protection throughout proceedings related to custody of Fake's children." *Fake v. Pennsylvania*, No. CV 17-3636, 2017 WL 4864980, at *2 (E.D. Pa. Oct. 27, 2017). In that action, Mr. Fake provided "a detailed timeline of events, ranging from August 9, 2016 to September 25, 2017, that he alleges have occurred in those proceedings." *Id*. Fake was unhappy about

various rulings that Judge Murphy and Judge Thompson made. *Id.* Judge Pappert dismissed that action reasoning that Mr. Fake could not bring claims under criminal statutes; that he alleged no facts that could plausibly support his claims of disability, religious, or gender discrimination; that he failed to state a claim under 42 U.S.C. § 1985 or § 1986 because he failed to allege discrimination based on race or another class; that his 42 U.S.C. § 1983 claims against the Commonwealth and the Court of Common Pleas were barred by the Eleventh Amendment; and that Judge Murphy and Judge Thompson were entitled to judicial immunity from his § 1983 claims for damages and for injunctive relief. *Id.* at 2–5. Mr. Fake's appeal of that dismissal to the United States Court of Appeals for the Third Circuit is still pending. *Fake v. Pennsylvania*, *appeal docketed*, No. 17-3590 (3d Cir. Nov. 29, 2017).

After he was unsuccessful in the United States District Court for the Eastern District of Pennsylvania, Mr. Fake filed the instant action in this Court. Mr. Fake's amended complaint is long on conclusions but short on facts to support those conclusions.

Mr. Fake alleges in his amended complaint that Judge Murphy has abused her position as administrative judge of the Philadelphia Court of Common Pleas, Domestic Relations Division, pursuant to which she acts as the gatekeeper of all operations of the Domestic Relations Division. He contends that she directed and

influenced officers within that court to violate his rights and intimidate him with arrest and the threat of arrest, all in an attempt to silence him and prevent his legal action against the criminal enterprise with which she is involved.  According to Mr. Fake, the criminal enterprise engages in fraud, extortion, and submits false claims under the Social Security Act.

Mr. Fake also alleges that Judge Murphy has a conflict of interest as to Ms. Fake, who according to Mr. Fake, has knowledge of fraud that Judge Murphy committed dating back to a 1995 divorce proceeding.  Mr. Fake further alleges that for the past 30 years or more, Ms. Fake has had a "personal family-like relationship with the Murphy family." *Id*. at 6.

Mr. Fake alleges that on September 12, 2016, Judge Murphy signed a written conspiratorial agreement with Judge Thompson "to act as her puppet in the willful obstruction of due process and obstruction of justice in retaliation for the legal actions [Mr. Fake] has taken in Federal Court." *Id*. at 6.[2]  According to Mr. Fake, this agreement "is proven in review of the court record and events that have occurred in this case." *Id*.[3]

---

[2]  It is not clear whether Mr. Fake is alleging that Judge Thompson was to be Judge Murphy's puppet, or vice versa.

[3]  Mr. Fake attached to his brief in opposition to the defendants' motion to dismiss an Order signed by Judge Murphy dated September 12, 2016, in which Judge Murphy assigned the custody matter at issue to Judge Thompson after Judge Sulman recused himself.  *See Doc. 8-3* at 3.  Apparently, this Order, in Mr. Fake's

Mr. Fake alleges that Judge Murphy has ignored the motion to disqualify, which according to Mr. Fake, the Superior Court remanded to her on September 20, 2017.[4]

Mr. Fake contends that Judge Thompson engaged in criminal misconduct, conspired with Judge Murphy to violate his civil rights, acted in the clear absence of jurisdiction, has shown bias against him, discriminated against him due to his disabilities, and has placed the lives of his children at risk as a result of her conspiracy to protect Ms. Fake.  Mr. Fake alleges that on September 12, 2016, Judge Thompson entered into a written conspiracy with Judge Murphy with the understanding that Judge Thompson will rule in favor of Ms. Fake.[5]  He contends that on August 9, 2017, Judge Thompson acted in the clear absence of jurisdiction in a matter that was under appeal.  Mr. Fake also contends that Judge Thompson stated on the record that she "would have had no jurisdiction to hear this matter if it were on appeal." *Doc. 3* at 9.  And according to Mr. Fake, although the matter was on appeal, Judge Thompson proceeded to remove custody of his children from

---

opinion, is, at least in part, the written conspiratorial agreement between Judge Murphy and Judge Thompson.

[4]  As the above summary of what happened in the state court shows, on September 20, 2017, the Superior Court denied Mr. Fake's motion to disqualify without prejudice to him seeking such relief in the trial court. *See* Docket Sheets in *BLF v. DJF*, 2621 EDA 2017 and 2687 EDA 2017 (Pa. Super. Ct.).  It did not remand the motion to disqualify to Judge Murphy.

[5]  *See* n.3.

10

him, placing the children at risk. He further alleges that Judge Thompson violated Pennsylvania law by scheduling a hearing for December 6, 2017, and again by delaying that hearing until February 20, 2018. Mr. Fake further alleges that Judge Thompson discriminated against him based on his gender and "extended outlandish courtesies to Ms. Fake, allowing her to be in willful disregard of a court order to obtain a 17 panel hair follicle test." *Doc. 3* at 9–10. According to Mr. Fake, Judge Thompson "is destroying evidence and obstructing justice in her favorable treatment of Ms. Fake," and is acting with a bias in favor of Ms. Fake, who is attempting to conceal her drug use. *Id*. at 10.

Mr. Fake complains that defendant Graci has refused "to take appropriate action against the criminal enterprise being operated by" Judge Murphy. He alleges that he notified defendant Graci more than two years ago about the purported criminal actions taking place in the Philadelphia Court of Common Pleas, but defendant Graci has failed to perform his duty. According to Mr. Fake, he spoke with defendant Graci twice during which defendant Graci indicated that no action was being taken. Mr. Fake contends that defendant Graci is obstructing justice by refusing to take action against Judge Murphy and Judge Thompson. He also contends that defendant Graci is protecting the financial interests of the Commonwealth of Pennsylvania, which is benefitting from the fraud and abuse in the Court of Common Pleas of Philadelphia County.

According to Mr. Fake, on December 5, 2017, defendant Graci confirmed that he has a long-standing personal relationship with Judge Pappert, who presided over Mr. Fake's prior federal cases, one of which named Graci as a defendant. Finally, Mr. Fake alleges that defendant Graci colluded with Judge Pappert "to bury this case in violation of Federal Law." *Id*. at 11.

Mr. Fake presents 42 U.S.C. § 1983 claims: he claims that the defendants violated the due process and equal protection clauses of the Fourteenth Amendment.[6] He also purports to brings claims under the Americans with Disabilities Act, the Religious Freedom Restoration Act, 42 U.S.C. § 1985, and 42 U.S.C. § 1986, as well as federal criminal statutes—18 U.S.C. § 2382 (misprision of treason) and 18 U.S.C. § 1031 (major fraud against the United States). He also makes a passing reference to the False Claims Act, 31 U.S.C.A. § 3729.

Mr. Fake seeks injunctive relief. He requests that this Court enter an "injunction to stop the ongoing fraud upon the court, violations of Plaintiff's civil rights and retaliatory actions." *Doc. 3* at 12. He also requests that "an impartial judge with the authority to rule on the child custody matter immediately and

---

[6] Mr. Fake cites both the Fifth Amendment and the Fourteenth Amendment. The Due Process Clause of the Fifth Amendment, however, applies to only the federal government and federal officials. *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 238 (M.D. Pa. 1995). "It does not apply to the acts or conduct of the states, their agencies, subdivisions, or employees." *Id.* The Fifth Amendment is not applicable in this case because the defendants here are state, not federal, actors. Thus, we construe Mr. Fake's claims as claims under the Fourteenth Amendment.

without further delay, review the case and take testimony from the minor children and provide them the opportunity to make a statement and provide an immediate decision based on evidence, testimony and the best interest of the children." *Id*.  He further request that "articles of impeachment" as to Judge Murphy and Judge Thompson be prepared, that a full investigation take place, and the state legislators enact new safeguards to prevent such abuse from reoccurring.  Mr. Fake also seeks compensatory and punitive damages.

By an order dated February 9, 2018, we granted Fake's application to proceed *in forma pauperis*, but we denied his motion for the appointment of counsel.  In this Report and Recommendation, we address the defendants' motion to dismiss and Mr. Fake's motion for a temporary restraining order and a preliminary injunction.

## III.  Motion to Dismiss.

Defendants the Philadelphia Court of Common Pleas, Judge Murphy, Judge Thompson, and defendant Graci ("moving defendants") filed a motion to dismiss the amended complaint.   The defendants moved to dismiss the complaint under both Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

## A. Motion to Dismiss Under Fed.R.Civ.P. 12(b)(1).

### 1. Rule 12(b)(1) Standards.

Rule 12(b)(1) permits the dismissal of an action for lack of subject-matter jurisdiction. Challenges to subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1) may be "facial" or "factual." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016). A facial attack contests the sufficiency of the pleadings. *Id.* When there is a facial attack, "we apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625,633 (3d Cir. 2017). "In contrast to a facial challenge, a factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). The plaintiff has the burden of persuading the court it has jurisdiction. *Id.*

### 2. The domestic-relations exception to the Court's diversity jurisdiction is not applicable.

The moving defendants contend that this Court does not have subject-matter jurisdiction based on the domestic-relations exception to jurisdiction.

There is a long-standing domestic-relations exception to diversity jurisdiction:

> The Supreme Court has long recognized a domestic relations exception to federal diversity jurisdiction. *Ankenbrandt,* 504

14

U.S. at 693–94, 112 S.Ct. 2206.  The exception has its roots in
*Barber v. Barber,* 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1859).
In *Barber* the Court held that the enforcement of an alimony
decree was within the jurisdiction of the federal courts, *id.* at
592, but also noted that federal courts have no jurisdiction over
suits for divorce or the allowance of alimony, *id.* at 584; *see
also Marshall v. Marshall,* 547 U.S. 293, 306, 126 S.Ct. 1735,
164 L.Ed.2d 480 (2006) (discussing the Court's holding and
dicta in *Barber*).  The modern rule, as expressed in
*Ankenbrandt,* provides "that the domestic relations exception
encompasses only cases involving the issuance of a divorce,
alimony, or child custody decree." 504 U.S. at 704, 112 S.Ct.
2206.  The Court in *Marshall* recently affirmed that "only
'divorce, alimony, and child custody decrees' remain outside
federal jurisdictional bounds." 547 U.S. at 308, 126 S.Ct. 1735
(quoting *Ankenbrandt,* 504 U.S. at 704, 112 S.Ct. 2206).

*Matusow v. Trans-Cty. Title Agency, LLC*, 545 F.3d 241, 245 (3d Cir. 2008)

(footnote omitted).

"There is a split among the Circuit Courts of Appeal as to whether the

domestic relations exception applies only to cases brought under diversity

jurisdiction or to any case that would otherwise have federal subject matter

jurisdiction." *Edelglass v. New Jersey*, No. CIV.A. 14-760 FLW DE, 2015 WL

225810, at *9 (D.N.J. Jan. 16, 2015), *aff'd sub nom. Allen v. DeBello*, 861 F.3d

433, 444 (3d Cir. 2017).  But "the Third Circuit has limited the domestic relations

exception to diversity: "'as a jurisdictional bar, the domestic relations exception

does not apply to cases arising under the Constitution or laws of the United

States."'" *Id*. (quoting *McLaughlin v. Pernsley,* 876 F.2d 308, 312 (3d Cir.1989)

(quoting in turn *Flood v. Braaten,* 727 F.2d 303, 308 (3d Cir.1984)).

15

This case is not brought under diversity-jurisdiction.  Rather, Mr. Fake raises federal claims and brings this case under federal-question jurisdiction.  Thus, the domestic-relations exception to diversity jurisdiction does not apply. *Allen*, 861 F.3d at 439 n.20 (noting that the domestic-relations exception did not apply in that case—a case brought under 42 U.S.C. § 1983).

### 3. The Eleventh Amendment bars the 42 U.S.C. §1983 claims against the Commonwealth and the Philadelphia Court of Common Pleas and the claims for damages against Judge Murphy and Judge Thompson in their official capacities.

Defendants Philadelphia County Court of Common Pleas and Judges Murphy and Thompson contend that the Court lacks jurisdiction because they are entitled to Eleventh Amendment immunity.

"Our federalist system of government accords respect for the sovereignty of the States in a variety of ways, including the Eleventh Amendment to the United States Constitution, which immunizes States from suits brought in federal court by both their own citizens and citizens of other States." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016).  It has been observed that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n.2 (3d Cir. 1996); *see also Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) ("Therefore, unless Congress has

'specifically abrogated' the states' sovereign immunity or a state has unequivocally consented to suit in federal court, we lack jurisdiction to grant relief in such cases."); *but see Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 197 (3d Cir. 2008) (noting that "the Supreme Court's jurisprudence has not been entirely consistent in the view that the Eleventh Amendment restricts subject matter jurisdiction").

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed
to extend to any suit in law or equity, commenced or prosecuted
against one of the United States by Citizens of another State, or
by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.  Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted '"to stand not so much for what it says, but for the presupposition . . . which it confirms."' *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)).  That presupposition is that each state is a sovereign entity in our federal system and it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.*  Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000).  "The Eleventh Amendment's protection . . . is not limited to the

States alone, but rather extends to entities that function as 'arms of the State.'"
*Maliandi*, 845 F.3d at 81.

A state, however, may waive its Eleventh Amendment immunity by consenting to suit, and Congress may abrogate states' Eleventh Amendment immunity when it unequivocally intends to do so and it acts pursuant to a valid grant of constitutional authority. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).  The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity, *see* 42 P.C.S.A. § 8521(b), and 42 U.S.C. § 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332 (1979).

The Eleventh Amendment bars the 42 U.S.C. § 1983 claims against the Commonwealth.[7]  And because the Philadelphia Court of Common Pleas is an arm

---

[7] Although the Commonwealth did not move to dismiss the amended complaint, it is clear that the Commonwealth is entitled to Eleventh Amendment immunity from Mr. Fake's 42 U.S.C. § 1983 claims.  "[A] court may 'on its own initiative enter an order dismissing [an] action provided that the complaint affords a sufficient basis for the court's action." *Lear v. Zanick*, 850 F. Supp. 2d 481, 489 (M.D. Pa. 2012) (quoting *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir. 1980)), *aff'd*, 524 F. App'x 797, 799 (3d Cir. 2013).  Generally, however, the Court must afford a litigant notice and opportunity to respond before dismissing a complaint *sua sponte*. *Coulter v. Unknown Prob. Officer*, 562 F. App'x 87, 89 n.2 (3d Cir. 2014) ("We have recognized that, after service of process, a district court noting the inadequacy of a complaint may, on its own, dismiss it for failure to state a claim provided it affords the litigant prior notice and an opportunity to respond."). Here, this Report and Recommendation provides Mr. Fake notice that his 42 U.S.C. § 1983 claims against the Commonwealth are barred by the Eleventh

of the state, the Eleventh Amendment also bars the 42 U.S.C. § 1983 claims

against it. *See Fake v. City of Philadelphia*, 704 F. App'x 214, 216 (3d Cir. 2017)

(concluding that Mr. Fake's claims against the Philadelphia Court of Common

Pleas were barred by the Eleventh Amendment); *Haybarger v. Lawrence Cty.*

*Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (concluding that "as an

arm of the State, an individual judicial district and its probation and parole

department are entitled to Eleventh Amendment immunity," but holding that in

that case, the Eleventh Amendment immunity was waived by acceptance of federal

funds under the Rehabilitation Act); *Benn v. First Judicial Dist. of Pa.*, 426 F.3d

233, 241 (3d Cir. 2005) ("The Pennsylvania constitution envisions a unified state

judicial system, of which the Judicial District is an integral component.  From a

holistic analysis of the Judicial District's relationship with the state, it is

undeniable that Pennsylvania is the real party in interest in Benn's suit and would

be subjected to both indignity and an impermissible risk of legal liability if the suit

were allowed to proceed.").

      Official-capacity suits are "only another way of pleading an action against

an entity of which an officer is an agent." *Monell v. New York City Dept. of Social*

*Services,* 436 U.S. 658, 690, n. 55 (1978).  In an official-capacity suit, the entity of

---

Amendment, and he has the opportunity to respond by way of objections to the
Report and Recommendation.

which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc.*, 730 F.3d at 318.

Because defendants Judge Murphy, Judge Thompson, and Graci are state officials, the 42 U.S.C. § 1983 claims against them in their official capacities for damages are really claims against the Commonwealth and, as such, are barred by the Eleventh Amendment.[8]

### 4. The *Rooker-Feldman* Doctrine does not bar Mr. Fake's claims for damages, but it bars his claim for custody of his children.

The moving defendants contend that the *Rooker-Feldman* doctrine bars Mr. Fake's claims.  "A finding that *Rooker–Feldman* bars a litigant's federal claims divests a District Court of subject matter jurisdiction over those claims." *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003).  And "[f]ederal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

---

[8]  The Eleventh Amendment does not bar claims against a state official in his or her individual or personal capacity. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).  Claims against a state official in his or her official capacity for prospective injunctive relief are also not barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908).

### a.  The *Rooker-Feldman* Doctrine.

The *Rooker-Feldman* doctrine embodies the principles set forth in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Section 1257 of Title 28 of the United States Code confers on the United States Supreme Court appellate jurisdiction to review final judgments of the states' highest courts.  Congress has not "conferred a similar power of review on the United States District Courts," *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 419 (3d Cir. 2003), and the *Rooker-Feldman* doctrine is the doctrine that, by negative implication, inferior federal courts lack subject-matter jurisdiction to review final judgments of the states' highest courts. *E.B. v. Verniero*, 119 F.3d 1077, 1090 (3d Cir. 1997).  Courts "have interpreted the doctrine to encompass final decisions of lower state courts" as well. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 134 F.3d 133, 143 (3d Cir. 1998).

### b.  Narrowing of the *Rooker-Feldman* Doctrine.

Although the Supreme Court applied the doctrine only twice to dismiss an action for lack of subject-matter jurisdiction—in *Rooker* and in *Feldman*—lower courts broadly interpreted the *Rooker-Feldman* doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction, concurrent with jurisdiction exercised by state courts,

and superseding the ordinary application of preclusion law pursuant to 28 U.S.C.

§ 1738." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 & 287

(2005). For example, the Third Circuit broadly interpreted the *Rooker–Feldman*

doctrine to divest the district court of jurisdiction '"under two circumstances: first,

if the [federal] claim was 'actually litigated' in state court prior to the filing of the

federal action or, second, if the [federal] claim is 'inextricably intertwined with

[the] state adjudication,' meaning that 'federal relief can only be predicated upon a

conviction that the state court was wrong.' " *Walker v. Horn*, 385 F.3d 321, 329

(3d Cir. 2004) (quoting *Desi's Pizza,* 321 F.3d at 419).

   In *Exxon Mobil*, the Supreme Court rejected "such an expansive application

of the *Rooker-Feldman* doctrine," and it held that the doctrine is "confined to cases

. . . brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments." *Great Western Mining &*

*Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting

*Exxon Mobil,* 544 U.S. at 284). The Court clarified that "[w]hen there is parallel

state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of

judgment in state court." *Exxon Mobil,* 544 U.S. at 292. Rather, "[d]isposition of

the federal action once the state-court adjudication is complete, [is] governed by

preclusion law," but "[p]reclusion, of course, is not a jurisdictional matter." *Id*. at

22

293.  In other words, "a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment," but the federal court does not lack "subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id*.  Thus, "[i]f a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id*. (quoting *GASH Associates v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Following *Exxon Mobile,* the Third Circuit nevertheless, at times, continued to apply the *Rooker-Feldman* doctrine using the standards it had before *Exxon Mobile. See In re Knapper*, 407 F.3d 573, 575, 580-581 n.15 (3d Cir. 2005) (holding that the bankruptcy court lacked subject-matter jurisdiction under *Rooker-Feldman* to void foreclosure judgments and the resulting sheriff's sale of two parcels of real property and while mentioning *Exxon Mobile* in a footnote, applying the *Rooker-Feldman* test as formulated before *Exxon Mobile*, i.e., that *Rooker-Feldman* applies when a federal claim was actually litigated in state court or when the federal claim is inextricably intertwined with the state-court adjudication, which occurs when "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the

federal court must take an action that would negate the state court's judgment")
(quoting *Walker*, 385 F.3d at 330); *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009)
(holding, without mentioning *Exxon Mobile* and using its pre-*Exxon Mobile*
formulation of *Rooker-Feldman*, that a claim seeking rescission of a loan under
TILA was barred by *Rooker-Feldman*).

In *Great Western Mining,* however, the Third Circuit recognized that *Exxon
Mobile* had rejected its previous "expansive application of the *Rooker-Feldman*
doctrine," and it cautioned against relying on its "'pre-*Exxon* formulation of the
*Rooker-Feldman* doctrine,' which focused on whether the state and federal suits
were 'inextricably intertwined.'" 615 F.3d at 166 & 169 (quoting *Gary v.
Braddock Cemetery*, 517 F.3d 195, 200 n.5 (3d Cir. 2008)).  The Third Circuit
explained that "[t]he phrase 'inextricably intertwined' does not create an additional
legal test or expand the scope of *Rooker-Feldman*." *Id.* at 170.  It "'has no
independent content.  It is simply a descriptive label attached to claims that meet
the requirements outlined in *Exxon Mobile*.'" *Id.* (quoting *Hoblock v. Albany Cty.
Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005)).

"Breaking down the holding of *Exxon Mobil,*" the Third Circuit
"conclude[d] that there are four requirements that must be met for the *Rooker–
Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the
plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those

24

judgments were rendered before the federal suit was filed; and (4) the plaintiff is

inviting the district court to review and reject the state judgments." *Id.* at 166

(internal quotation marks omitted) (quoting *Exxon Mobile*, 544 U.S. at 284).

### c. The *Rooker-Feldman* doctrine does not bar Mr. Fake's claims for damages, but it bars his claim for custody of his children.

Courts have concluded that the *Rooker–Feldman* doctrine bars claims

seeking to challenge state custody and support judgments. *See e.g. Prater v. City of*

*Philadelphia Family Court*, 569 F. App'x 76, 79 (3d Cir. 2014) ("To the extent

that Prater sought to challenge the ultimate judgment in the custody matter, the

*Rooker–Feldman* doctrine barred his claim."); *Bukovinsky v. Pennsylvania*, 455 F.

App'x 163, 166 (3d Cir. 2011) ("We also agree that the *Rooker–Feldman* doctrine

bars Bukovinsky's claim that he has been harmed by state court judgments entered

in the contempt and custody proceedings."); *Watson v. Kameen*, No. CV 3:15-

1060, 2015 WL 7016503, at *2 (M.D. Pa. Nov. 12, 2015) (concluding that

"[i]nsofar as plaintiff's amended complaint appears to seek this court to reverse

valid state-court judgments in his custody proceedings, any review of those state

court decisions is barred by the *Rooker-Feldman* doctrine"); *Hudson v. Ness*, No.

1:13-CV-2207, 2013 WL 4854521, at *1 (M.D. Pa. Sept. 11, 2013) (concluding

that under *Rooker–Feldman*, the court lacked the ability to review and reject

adverse state-court rulings in a domestic relations case and adopting Report and

Recommendation of a magistrate judge citing numerous cases in which courts have held that the *Rooker–Feldman* bars claims arising from state domestic relations rulings).

But each case must be analyzed to determine whether the four requirements set forth in *Great Western* are satisfied.  Here, the first and third requirements are met because Mr. Fake lost custody of his children in the state court before he filed this federal action.  Thus, we turn to the second and fourth requirements, which "are the key to determining whether a federal suit presents an independent, non-barred claim." *Great Western,* 615 F.3d at 166.

### i.  The Second Requirement of *Rooker-Feldman*.

"The second requirement—that a plaintiff must be complaining of injuries caused by a state-court judgment—may also be thought of as an inquiry into the source of the plaintiff's injury." *Id*.  "When . . . a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction" "even if [the federal action] asks the federal court to deny a legal conclusion reached by the state court" and "even though the injuries of which the plaintiff complain[s] helped to cause the adverse state judgment." *Id*. at 167-168.  "A useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-

26

court proceedings and thus could not have been 'caused by' those proceedings." *Id*. at 167.  But "[e]ven if the plaintiff would not have suffered any damages from the [defendant's actions] absent the state-court order, her claim [is] not barred by *Rooker Feldman*," if "'her claim for damages is based on an alleged independent violation of her . . . rights . . .which caused the adverse state decision.'" *Id*. at 172 (quoting *Brokaw v. Weaver*, 305 F.3d 660, 667 (7th Cir. 2002)).

Here, Mr. Fake contends that Judge Murphy and Judge Thompson were biased and conspired against him.  It appears that, at least in part, Mr. Fake is claiming that Judge Murphy and Judge Thompson's acts during the course of the state proceedings, rather than the actual orders they issued, were the source of his injuries.  In *Great Western*, the plaintiff brought a claim that the defendants conspired with state judges to violate its due process rights.  The Third Circuit concluded that the source of the plaintiff's alleged injury was not the state court judgments themselves and, thus, *Rooker–Feldman* did not bar the claim:

> Great Western, by alleging a conspiracy between Defendants and the Pennsylvania judiciary to rule in favor of Rutter and ADR Options, is attacking the state-court judgments.  But, . . . Great Western is not merely contending that the state-court decisions were incorrect or that they were themselves in violation of the Constitution.  Instead, Great Western claims that "people involved in the decision violated some independent right," that is, the right to an impartial forum.  The alleged agreement to reach a predetermined outcome in a case would itself violate Great Western's constitutional rights, independently of the subsequent state-court decisions. "[B]ecause [Great Western's] claim for damages is based on an

27

> alleged independent violation of [its] constitutional rights," the source of Great Western's purported injury was the actions of Defendants and members of the Pennsylvania judiciary, not the state-court decisions themselves.  "It was this separate constitutional violation which caused the adverse state court decision" and the injury to Great Western.  Thus, as the state-court judgments were not themselves the cause of Great Western's alleged injuries, the *Rooker–Feldman* doctrine did not deprive the District Court of jurisdiction over Great Western's claims.

*Great Western*, 615 F.3d at 172–73 (citations omitted).  The exact nature of all of Mr. Fake's claims is not clear, and, thus, determining the source of his injury is difficult.  But to the extent that he is claiming the Judge Murphy and Judge Thompson were biased and denied him due process and equal protection during the custody proceedings, his claim appears similar to the claim at issue in *Great Western*, where the Third Circuit determined that the source of the injury was the defendants' actions leading to the state-court judgment rather than the state-court judgment itself.  The Third Circuit held that "[e]ven if the plaintiff would not have suffered any damages from the [defendant's actions] absent the state-court order, her claim [is] not barred by *Rooker Feldman*," if "'her claim for damages is based on an alleged independent violation of her . . . rights . . .which caused the adverse state decision.'" *Id*. at 172 (quoting *Brokaw v. Weaver*, 305 F.3d 660, 667 (7th Cir. 2002)).  Given this, the second requirement of *Rooker-Feldman* is generally not satisfied here.

But while the nature of Mr. Fake's claims is not entirely clear, he does appear to challenge the custody decision itself. *Lane v. New Jersey*, No. 17-2109, 2018 WL 919918, at *2 (3d Cir. Feb. 16, 2018) ("Lane was clearly complaining of the injuries caused by the judgment—he directly challenged the provision that he not be allowed unsupervised visits with his children, and he was explicitly asking the District Court to overturn that portion of the ruling."). To the extent, Mr. Fake is challenging the custody order and requesting a change in that order, the second requirement of the *Rooker-Feldman* doctrine is satisfied.

### ii. The Fourth Requirement of *Rooker-Feldman*.

The fourth element—that the plaintiff is inviting the federal court to review and reject the state-court judgment—is "closely related" to the second requirement. *Id*. at 168. "Yet, a federal plaintiff who was injured by a state-court judgment is not invariably seeking review and rejection of that judgment." *Id*. "Prohibited appellate review 'consists of a review of the proceedings already conducted by the [state] tribunal to determine whether it reached its result in accordance with law.'" *Id*. at 169 (quoting *Bolden v. City of Topeka, Ks.,* 441 F.3d 1129, 1143 (10th Cir. 2006)). But "as long as the 'federal plaintiff present[s] some independent claim,' even if that claim denies a legal conclusion reached by the state court," *Rooker-Feldman* does not bar that action. *Id*. (quoting *Exxon Mobile*, 544 U.S. at 293).

"When 'the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment,' the second, or federal, court 'is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.' " *Id*. (quoting *Bolden,* 441 F.3d at 1143).

"[T]he nature of the relief requested by the federal plaintiff may be critical in the court's evaluation of the second and fourth requirements under the *Rooker– Feldman* test set forth in *Great Western Mining*." *In re Sabertooth, LLC*, 443 B.R. 671, 681–82 (Bankr. E.D. Pa. 2011). "In both *Rooker* and *Feldman,* the plaintiffs sought to have the state-court decisions undone or declared null and void by the federal courts." *Id*. at 173.

Here, at least in part, as we understand it, Mr. Fake is seeking custody of his children. To that extent, the fourth element is satisfied. But Mr. Fake also seeks damages. Before this Court could award some of the damages that Mr. Fake seeks, it would have to find that he was denied due process or equal protection, but "there is a difference between asking the district court to undo a state court judgment and asking the district court to find that a state court judgment was entered erroneously as a result of defendants' actions." *Duffy v. George*, No. CV 14-02111, 2015 WL 9460135, at *8 (M.D. Pa. Dec. 23, 2015), *aff'd on other grounds,* 669 F. App'x 73

(3d Cir. 2016) (affirming without mentioning *Rooker-Feldman*); *see also Kamdem-Ouaffo v. Leblon*, 673 F. App'x 223, 226 (3d Cir. 2016) (holding in a case against a judge, among others, claiming that the defendants conspired to violate his due process rights and in which the plaintiff asked the district court to overrule a state-court order that the plaintiff's claims were barred by *Rooker-Feldman* to the extent that he sought to set aside the state court judgment, but "[t]o the extent that [the plaintiff] contends that the state proceedings violated his independent constitutional right to a fair tribunal, his claims" were not barred by *Rooker-Feldman*); *Mikhail v. Kahn*, 572 F. App'x 68, 70-71 n.2 (3d Cir. 2014) (noting in a case involving claims against, among others, judges who had presided over state divorce, custody, and Protection From Abuse cases that the court lacked subject-matter jurisdiction under *Rooker-Feldman* to the extent that the plaintiff "sought review of the Protection From Abuse orders or sought declaratory relief relating to them," but addressing the claims against the judges for monetary damages and finding that the judges were entitled to absolute judicial immunity); *Young v. Dubow*, 411 F. App'x 456, 458 (3d Cir. 2011) (holding that *Rooker-Feldman* barred claims where the "complaint stemmed from the adverse custody decision rendered in state court, Young claims that she and her children have been harmed by that decision, and she expressly asks the District Court to reverse Judge Dubow's custody award"); *Phillips v. James*, 403 F. App'x 641, 643 (3d Cir. 2010)

31

(concluding that *Rooker-Feldman* barred claims, including due process claims, against state judges because the plaintiff claimed "no injury apart from the rulings he believes were erroneous and expressly requests a 'remand' to state court for a psychological evaluation and 'retrial by jury.'"); *Stacey v. City of Hermitage*, 178 F. App'x 94, 98–99 (3d Cir. 2006) (concluding that *Rooker-Feldman* did not bar plaintiffs' claims including a claim that the judge who presided over the state-court action was biased against them and had *ex parte* discussions with opposing counsel given that the plaintiffs did not invite the district court to review and reverse the state-court judgment); *Phillips v. James*, 403 F. App'x 641, 643 (3d Cir. 2010) (concluding that *Rooker-Feldman* barred claims, including due process claims, against state judges because the plaintiff claimed "no injury apart from the rulings he believes were erroneous and expressly requests a 'remand' to state court for a psychological evaluation and 'retrial by jury.'"); *but see Lepre v. Lukus*, 602 F. App'x 864, 870 (3d Cir. 2015) (concluding in a case involving child-support wage-garnishment orders that the district court "properly determined that it lacked subject matter jurisdiction under the *Rooker–Feldman* doctrine to the extent that Lepre attempted to challenge these state court orders, even if he did couch his arguments in constitutional terms").

In order to award Mr. Fake damages, this Court need not reject or overrule

the state-court judgments.  Again, we conclude that the Third Circuit's reasoning

in *Great Western* is applicable here:

> Regardless of the merits of the state-court decisions, if Great
> Western could prove the existence of a conspiracy to reach a
> predetermined outcome in state court, it could recover nominal
> damages for this due process violation.  Great Western's
> entitlement to such damages could be assessed without any
> analysis of the state-court judgments.  To recover for more than
> the alleged due process violation, however, Great Western
> would have to show that the adverse state-court decisions were
> entered erroneously.  This is not the type of appellate review of
> state-court decisions contemplated by the *Rooker–Feldman*
> doctrine.  In both *Rooker* and *Feldman,* the plaintiffs sought to
> have the state-court decisions undone or declared null and void
> by the federal courts.  The relief requested by the plaintiffs in
> the federal courts would have required effectively overruling
> the state-court judgments.  This is not the case here.  Great
> Western may, "as part of [its] claim for damages," show "that
> the [constitutional] violation caused the decision[s] to be
> adverse to [it] and thus did [it] harm."  A finding by the District
> Court that state-court decisions were erroneous and thus injured
> Great Western would not result in overruling the judgments of
> the Pennsylvania courts.  Pursuant to *Exxon Mobil,* a federal
> plaintiff may not seek "review and rejection" of state-court
> judgments.  Here, while Great Western's claim for damages
> may require review of state-court judgments and even a
> conclusion that they were erroneous, those judgments would
> not have to be rejected or overruled for Great Western to
> prevail.  Accordingly, the review and rejection requirement of
> the *Rooker–Feldman* doctrine is not met, and the District Court
> properly exercised jurisdiction over Great Western's suit.

*Great Western*, 615 F.3d at 173.  Because Mr. Fake's request for damages does not

invite the court to review and reject the state-court custody judgment, the fourth

requirement of the *Rooker–Feldman* doctrine is not satisfied as to the claim for damages.

In sum, to the extent that Mr. Fake is seeking to have this Court change the custody order, he is inviting the Court to review and reject the state-court order, and the *Rooker-Feldman* bars doctrine bars such a claim.  But because neither the second nor the fourth requirement of the *Rooker-Feldman* doctrine are satisfied here as to Mr. Fake's claims for damages, this Court has subject-matter jurisdiction over Mr. Fake's claims for damages against Judge Murphy and Judge Thompson in their individual capacity.  Nevertheless, as discussed below, Judge Murphy and Judge Thompson are shielded by immunity from those claims.

### B.  Motion to Dismiss under Rule (12)(b)(6).

### 1.  Rule (12)(b)(6) Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and the court must draw all reasonable inferences from the facts alleged in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). But a court "need not

credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege

36

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### 2.  Mr. Fake cannot bring claims on behalf of his minor children.

Mr. Fake lists C. Fake and B. Fake as plaintiffs in the caption of his amended complaint.  Mr. Fake appearing *pro se* is not permitted, however, to represent other parties, including his minor children. *Osei–Afriyie v. Med. Coll. of Pa.,* 937 F.2d 876, 882–83 (3d Cir.1991) (*pro se* litigant not permitted to represent his minor children); *Fake v. Philadelphia Court of Common Pleas*, No. CV 16-3893, 2016 WL 4039654, at *3 (E.D. Pa. July 27, 2016) (concluding that Mr. Fake "lacks standing to raise claims on behalf of third parties and, as a non-attorney proceeding *pro se*, may not represent other individuals in this Court, even his own children").

### 3. Judicial Immunity bars Mr. Fake's claims for damages against Judge Murphy and Judge Thompson in their individual capacities.

Mr. Fake  brings his constitutional claims under 42 U.S.C. § 1983.  "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*  To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

"Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws,' the Supreme Court has recognized that § 1983 was not meant to 'abolish wholesale all common-law immunities.'" *Yarris v. County of Delaware,* 465 F.3d 129, 134-35 (3d Cir. 2006) (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)).  There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Id.* at 135. Although most public officials are entitled only to qualified immunity, public

officials who perform "special functions" are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou,* 438 U.S. 478, 508 (1978)).  "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006).  "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti,* 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz,* 438 U.S. at 512).

A functional approach is used to determine whether absolute or qualified immunity applies. *Forrester v. White,* 484 U.S. 219, 224 (1988).  The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it. *Id.*  "The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000). The Court has described the reasons for recognizing judicial immunity as follows:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have . . . . [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided.  If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it

would manifestly detract from independent and impartial
adjudication.

*Forrester*, 484 U.S. at 226-27(citations omitted).

We engage in a two-part inquiry to determine whether judicial immunity is

applicable. *Gallas,* 211 F.3d at 768.  First, because immunity applies only to

actions taken in a judge's judicial capacity, we must determine whether the

challenged actions of the judge were taken in his or her judicial capacity *Id.*  The

relevant factors "relate to the nature of the act itself, i.e., whether it is a function

normally performed by a judge, and to the expectations of the parties, i.e., whether

they dealt with the judge in his judicial capacity.'" *Id.* at 768 (quoting *Stump v.*

*Sparkman*, 435 U.S. 349, 362 (1978)).  "Our task is to 'draw the line between truly

judicial acts, for which immunity is appropriate, and acts that simply happen to

have been done by judges,' such as administrative acts." *Id.* (quoting *Forrester,*

484 U.S. at 227).

"Second, a judge is not immune for actions, though judicial in nature, taken

in the complete absence of all jurisdiction." *Id.*  In this regard, "we must

distinguish between acts in the 'clear absence of all jurisdiction,' which do not

enjoy the protection of absolute immunity, and acts that are merely in 'excess of

jurisdiction,' which do enjoy that protection." *Id.* at 769 (quoting *Stump*, 435 U.S.

at 356 n.6).  Judicial immunity shields a judge from liability for judicial acts even

if those acts were taken in error, if they were done maliciously, if they were in

40

excess of the judge's authority, if the judge committed grave procedural errors, or

if the judge's actions were unfair or controversial. *Id.* at 769.  A judge will be

subject to liability only when he or she has acted in the clear absence of all

jurisdiction. *Id.*  "In sum, our analysis must focus on the general nature of the

challenged action, without inquiry into such 'specifics' as the judge's motive or the

correctness of his or her decision." *Id.*

All the allegations in Mr. Fake's amended complaint relate to actions taken

by Judge Murphy and Judge Thompson in their judicial capacities as judges

overseeing custody proceedings in the Court of Common Pleas.

Further, their actions were not taken in the clear absence of jurisdiction.

Although Mr. Fake contends that Judge Thompson did not have jurisdiction to

issue the August 9, 2017 custody order because his appeal of Judge Fanning's June

30, 2017 custody order was pending, the Superior Court determined that Mr.

Fake's appeal was untimely and, in any event, he could not appeal from Judge

Fanning's temporary order.  Moreover, even if Judge Thompson acted in excess of

her jurisdiction given the appeal, she did not act in the clear absence of

jurisdiction.  The Supreme Court has noted that there is a distinction between a

judge acting in excess of jurisdiction and acting in the clear absence of jurisdiction:

> "A distinction must be here observed between excess of
> jurisdiction and the clear absence of all jurisdiction over the
> subject-matter.  Where there is clearly no jurisdiction over the
> subject-matter any authority exercised is a usurped authority,

> and for the exercise of such authority, when the want of
> jurisdiction is known to the judge, no excuse is permissible.
> But where jurisdiction over the subject-matter is invested by
> law in the judge, or in the court which he holds, the manner and
> extent in which the jurisdiction shall be exercised are generally
> as much questions for his determination as any other questions
> involved in the case, although upon the correctness of his
> determination in these particulars the validity of his judgments
> may depend."

*Stump v. Sparkman*, 435 U.S. 349, 356 n.6 (1978) (quoting *Bradley v. Fisher*, 80

U.S. 335, 351–52 (1871)).   "Generally, therefore, 'where a court has some subject

matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"

*Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000) (quoting *Barnes v.*

*Winchell,* 105 F.3d 1111, 1122 (6th Cir.1997)); *see also Gallas*, 211 F.3d at 771

2000) (holding that "a judge does not act in the clear absence of all jurisdiction

when the judge enters an order at least colorably within the jurisdiction of her court

even though a court rule or other procedural constraint required another judge to

act in the matter").

Here, Judge Thompson and Judge Murphy as judges of the Court of

Common Pleas had subject-matter jurisdiction to enter orders in custody cases.

*See* 23 Pa. Stat. and Cons. Stat. Ann. § 542.  Thus, they did not act in the clear

absence of jurisdiction.  And they are entitled to judicial immunity from Mr.

Fake's § 1983 claims for damages.

### 4. The Federal Courts Improvement Act of 1996 bars Mr. Fake's claims for injunctive relief as to Judge Murphy and Judge Thompson.

Mr. Fake's request for injunctive relief as to Judge Murphy and Judge Thompson is not proper.

In *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984), the Supreme Court held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." Later, however, as part of the Federal Courts Improvement Act of 1996, Congress amended 42 U.S.C. § 1983 by adding the following language "*except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*" *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197 (3d Cir. 2000) (italics in original) (quoting 42 U.S.C. § 1983). "The foregoing amendatory language to § 1983 does not expressly authorize suits for declaratory relief against judges." *Id*. "Instead, it implicitly recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate." *Id*. at 197–98.

Here, although Mr. Fake alleges that declaratory relief was unavailable, he does so in a conclusory manner, and he does not present facts from which it can

reasonably be inferred that declaratory relief was unavailable.[9]  Further, Mr. Fake's

suggestion that Judge Murphy or Judge Thompson violated a declaratory decree by

ignoring his motion to disqualify, which, according to Mr. Fake, the Superior

Court remanded on September 20, 2017, is without merit.  At noted above, *see* n.3,

on September 20, 2017, the Superior Court denied Mr. Fake's motion to disqualify

without prejudice to him seeking such relief in the trial court. *See* Docket Sheets in

*BLF v. DJF*, 2621 EDA 2017 and 2687 EDA 2017 (Pa. Super. Ct.).  It did not

remand the motion to disqualify to Judge Murphy.  Thus, Mr. Fake's suggestion

that Judge Murphy or Judge Thompson violated a declaratory decree is without

merit.  Accordingly, the claim for injunctive relief against Judge Murphy and

Judge Thompson is not proper.


### 5.  The claims against defendant Graci should be dismissed.

Mr. Fake complains that defendant Graci refused "to take appropriate action

against the criminal enterprise being operated by" Judge Murphy and that he is

obstructing justice by refusing to take action against Judge Murphy and Judge

Thompson.  He also contends that Graci is protecting the financial interests of the

Commonwealth of Pennsylvania, which is benefitting from the fraud and abuse in

the Court of Common Pleas of Philadelphia County.

---

[9]  We note that Mr. Fake has not requested declaratory relief in this case.

Defendant Graci contends that he is entitled to prosecutorial or qualified immunity from such claims.

A functional approach is used to determine the immunity of a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). "The functions of the prosecutor encompass activities protected by both absolute and qualified immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992). The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone,* 538 F.3d 202, 208 (3d Cir. 2008). Absolute immunity, however, does not apply to administrative or investigative actions unrelated to initiating or conducting judicial proceedings. *Id.* Prosecutors are shielded by absolute immunity for actions that are intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Such activities include activities undertaken while in court as well as selected out-of-court behavior intimately associated with the judicial phases of litigation. *Kulwicki,* 969 F.2d at 1463. The decision to initiate a prosecution is at the core of a prosecutor's judicial role, and a prosecutor is absolutely immune when making such a decision even if he or she acts without a good faith belief that any wrongdoing has occurred. *Id.* at 1463-64. Prosecutorial immunity can apply in the context of prosecutions by the Judicial Conduct Board.

*See Lokuta v. Sallemi*, No. 3:CV-13-0288, 2013 WL 5570227 (M.D. Pa. Oct. 9,

2013),

Here, it appears that Mr. Fake is complaining about defendant Graci's failure

to bring charges against Judge Murphy and Judge Thompson.  Defendant Graci is

entitled to prosecutorial immunity to the extent that Mr. Fake's claims against him

are based on his failure to investigate and file charges against Judge Murphy and

Judge Thompson. *Id.* at *9 (concluding that Judicial Conduct Board defendants,

including the then chief counsel, were entitled to prosecutorial immunity "for their

alleged failure to investigate or prosecute [Judge] Conahan because 'prosecutors

enjoy absolute immunity for the failure to adequately investigate a case and for the

decision to initiate, or decline to initiate, a prosecution'") (quoting *Sanders v.

Downs,* 420 F. App'x 175, 180 (3d Cir.2011)).

To the extent, the Mr. Fake's claims against defendant Graci are not based

on Graci's prosecutorial decisions as to Judge Murphy and Judge Thompson,

defendant Graci is nevertheless entitled to qualified immunity.

Despite their participation in constitutionally impermissible conduct,

government officials "may nevertheless be shielded from liability for civil

damages if their actions did not violate 'clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Hope v.

Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)).  Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Id.*  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818-19.

The qualified immunity analysis has two prongs. *Pearson,* 555 U.S. at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.*  The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  The court is permitted to exercise its discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances of the particular case. *Pearson,* 555 U.S. at 236.  So it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. *Id.*

The "qualified immunity analysis looks through the rearview window, not the windshield." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017). "The inquiry focuses on the state of the relevant law when the violation allegedly occurred." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson,* 555 U.S. at 244 (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)). "[T]he facts of the existing precedent need not perfectly match the circumstances of the dispute in which the question arises." *Williams*, 848 F.3d at 570. But if the law did not put the officer on notice that his conduct would be clearly unlawful, qualified immunity is appropriate. *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those

who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *al-Kidd*, 563 U.S. at 743).

For qualified immunity purposes, the law cannot be defined at a high level of generality. *al-Kidd*, 563 U.S. at 742.  "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." *Sheehan*, 135 S. Ct. at 1776.  Rather, because the qualified-immunity inquiry "focuses on the official's actual situation, the analysis 'must be undertaken in light of the specific context of the case, not as a broad general proposition. . . .'" *Montanez v. Thompson*, 603 F.3d 243, 251 (3d Cir. 2010) (quoting *Saucier,* 533 U.S. at 201).

Here, it was not clearly established that Mr. Fake had a constitutional right to an investigation of Judge Murphy and Judge Thompson.  A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973); *Town of Castle Rock v. Gonzalez,* 545 U.S. 748, 768 (2005)("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations.").  And there is no constitutional right to an investigation of a third party. *Fuchs v. Mercer Cnty.,* 260 F.App'x 472, 475 (3d Cir. 2008).  Accordingly, it was not clearly established that defendant Graci

violated Mr. Fake's right by failing or delaying to take action on his complaints regarding Judge Murphy and Judge Thompson.

Mr. Fake also contends that defendant Graci colluded with Judge Pappert, with whom he has a long standing personal relationship, "to bury" his prior federal case "in violation of Federal Law." *Doc. 3* at 11.

The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989). "To demonstrate the existence of a conspiracy under § 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir.1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392 (3d Cir. 2003)). "It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Perez v. Gamez*, 1:13-CV-1552, 2013 WL 6073877, at *9 (M.D. Pa. Nov. 18, 2013). Rather, the plaintiff must show that the defendants acted in concert with the specific intent to violate the plaintiff's rights. *Davis v. Fox*, 3:12-CV-1660, 2013 WL 5656125, at * 5 (M.D. Pa. Oct. 15, 2013).

Because direct evidence of a conspiracy is rarely available, the existence of a conspiracy may be inferred from the circumstances. *Capogrosso v. The Supreme*

*Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009).  Still, to state a conspiracy claim upon which relief can be granted, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178 (3d Cir. 2010).  "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Here, Mr. Fake has not alleged any facts to reasonably support a conspiracy between defendant Graci and Judge Pappert.  And the mere fact that defendant Graci purportedly has a personal relationship with Judge Pappert does not raise an inference of a conspiracy.  Accordingly, the amended complaint fails to state a claim upon which relief can be granted against defendant Graci.

### 6. The Amended Complaint fails to state any other claims upon which relief can be granted.

Fake cites to 42 U.S.C. § 1985(2) and § 1985(3).  42 U.S.C. § 1985(3) "permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson,* 440 F.3d 131, 134 (3d Cir. 2006) (quoting § 1985(3)).  Section 1985(3) is limited to conspiracies based on racial or some other class-based invidiously discriminatory animus. *Griffin v. Breckenridge,* 403

U.S. 88, 102 (1971).  Only the second part of §1985(2), which "applies to conspiracies to obstruct the course of justice in state courts," *Kush v. Rutledge*, 460 U.S. 719, 725 (1983), is potentially relevant in this case.  That part of § 1985(2) is also limited to conspiracies based on racial or some other class-based invidiously discriminatory animus. *Davis v. Twp. of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999). Because Fake has not alleged a racial or other class-based discriminatory animus, his claims under 42 U.S.C. § 1985(2) and (3) are without merit.

Mr. Fake also cites to 42 U.S.C. § 1986, which provides a cause of action for failing to prevent a conspiracy under Section 1985.  "Section 1986, therefore, is derivative of section 1985." *Dennison v. PA Dept. of Corrections*, 268 F.Supp.2d 387, 402 n.10 (M.D.Pa. 2003).  Since the amended complaint fails to state a § 1985 claim upon which relief can be granted, it follows that the complaint fails to state a § 1986 claim upon which relief can be granted.

Fake also cites to criminal statutes—18 U.S.C. § 2382 (misprision of treason) and 18 U.S.C. § 1031 (major fraud against the United States).  But he has not shown that those criminal statutes provide a private right of action, and there is "no federal right to require the government to initiate criminal proceedings." *Rodriguez v. Salus*, 623 F. App'x 588, 590 (3d Cir. 2015); *see also Fake v. Pennsylvania*, No. CV 17-3636, 2017 WL 4864980, at *2 (E.D. Pa. Oct. 27, 2017) (dismissing Fake's claims brought under criminal statutes including 18 U.S.C.

§ 2382 and noting that the court "previously informed Fake [that] criminal statutes do not provide a basis for civil liability").  Accordingly, the Court should dismiss Fake's claims based on the criminal statutes.

Fakes makes a passing references to the False Claims Act, 31 U.S.C.A. § 3729, to the Americans with Disabilities Act, and to Religious Freedom Restoration Act.  But he fails to allege any facts that could plausibly support claims under those statutes.  Accordingly, the Court should dismiss Fake's claims based on these statutes.[10]

### C.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  Here, most of the claims of Mr. Fake are legally barred and given that this is the third federal case that Mr. Fake has filed about the state court proceedings, we conclude that granting Mr. Fake leave to amend would be futile.

---

[10]  Given that we have determined that the amended complaint fails to state any claims upon which relief can be granted, we do not address the additional reasons set forth by the defendants for dismissing the amended complaint.

## IV.  Motion for a Temporary Restraining Order and Preliminary Injunction.

Mr. Fake filed a motion for a temporary restraining order and a preliminary injunction.  He contends that on February 3, 2018, he served motions on the defendants to disqualify them from proceeding in the custody case and for them to recuse themselves from the custody case.  According to Fake, despite these motions, Judge Thompson proceeded with the hearing scheduled for February 20, 2018, during which she purportedly intimidated C.F. and B.F. during private interviews.  Judge Thompson also stated that she would not enter a decision until after a May 10, 2018 hearing on Mr. Fake's motions.  Mr. Fake contends that the defendants violated and are continuing to violate his rights.  He seeks a temporary restraining order preventing further activity in the custody case in the Court of Common Pleas pending a hearing or conference in this case, and he seeks a preliminary injunction immediately returning primary custody of C.F. and B.F. to him.

A motion for preliminary injunctive relief is governed by Rule 65 of the Federal Rules of Civil Procedure and is judged against exacting legal standards. To obtain a preliminary injunction, a party "must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater

harm to the nonmoving party; and (4) the public interest favors such relief." *Miller v. Mitchell,* 598 F.3d 139, 147 (3d Cir. 2010).

Preliminary injunctive relief is not granted as a matter of right. *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982); *see also Thomas v. Pennsylvania Dep't of Corr.*, 3:13-CV-2661, 2014 WL 3955105, at *1 (M.D. Pa. Aug. 13, 2014) ("An injunction is an 'extraordinary remedy' that is never awarded as of right."). Rather, the decision to grant or deny such relief is committed to the discretion of the district court. *United States v. Price*, 688 F.2d 204, 210 (3d Cir. 1982). Preliminary injunctive relief is an extraordinary remedy that places precise burdens on the moving party, and "[t]he preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "It has been well stated that upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

For a party to sustain his burden of proof that he is entitled to preliminary injunctive relief under Fed.R.Civ.P. 65, he must demonstrate a likelihood of success on the merits. *Abu-Jamal v. Price,* 154 F.3d 128, 133 (3d Cir. 1998); *Kershner v. Mazurkiewicz,* 670 F.2d 440, 443 (3d Cir. 1982). "To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of

action." *Sutton v. Cerullo*, 3:CV-10-1899, 2014 WL 3900235, at *5 (M.D. Pa.

Aug. 8, 2014).

Here, given that we have concluded that Mr. Fake's amended complaint fails

to state a claim upon which relief can be granted, Mr. Fake has failed to establish a

reasonable probability of success on the merits. In sum, Mr. Fake has not met the

heavy burden of showing that he is entitled to the extraordinary relief of

preliminary injunctive relief, and so, we will recommend that the Court deny his

motion for a temporary restraining order and a preliminary injunction.


## V. Recommendations.

Accordingly, we recommend that the Court grant the defendants' motion

(doc. 5) to dismiss the amended complaint and that it deny Mr. Fake's motion (doc.

10) for a temporary restraining order and a preliminary injunction.


The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within
fourteen (14) days after being served with a copy thereof. Such party
shall file with the clerk of court, and serve on the magistrate judge and
all parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to
which objection is made and the basis for such objections. The
briefing requirements set forth in Local Rule 72.2 shall apply. A

judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22nd day of March, 2018.


**_S/Susan E. Schwab_**
Susan E. Schwab
Chief United States Magistrate Judge